UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| **LADONNA KNOX,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 1:23-CV-81-SNLJ |
| | ) |
| **KILOLO KIJAKAZI,** | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

Plaintiff LaDonna Knox applied for disability insurance benefits under Title II of the Social Security Act.  Her application was denied, and she appealed the denials to an administrative law judge ("ALJ").  After a hearing, the ALJ found plaintiff was not disabled, and plaintiff now seeks judicial review [Doc. 9]. The defendant filed a response brief, but no reply was filed, and the time for doing so has expired.

As discussed below, the Commissioner's decision is supported by substantial evidence on the record as a whole and is affirmed.

**I.      Background**

Plaintiff Knox was born in 1972 and was 44 years old when she alleges she became disabled on October 1, 2016.  She has a high school education and most recently worked as a certified nursing assistant in a hospital from 2013 to 2016.  In her disability report, she alleges disability due to chronic stomach issues, chronic back and leg pain, heart issues,

1

strength issues, and high blood pressure.  [Tr. 190.]  Further relevant background will be discussed as appropriate below.

On August 2, 2022, the ALJ issued her opinion.  The ALJ's decision recognized that plaintiff had the severe impairments obesity, neuropathy, carpal tunnel syndrome, back disorder, coronary artery disease, hypertension, and GI/urinary dysfunction.  [Tr. 15.]

The ALJ stated that she found plaintiff's impairments could be expected to cause the alleged symptoms, but that plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record…" [Tr. 18.]  The ALJ found that plaintiff could still work with certain limitations, including the limitation that she "needs ready access to a restroom during regularly scheduled breaks."  [Tr. 17.]  Plaintiff appeals.

**II.     Disability Determination—Five Steps**

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the

Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003); *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(c), 404.1520a(d), 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); 416.920(a)(3)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(5)(i), 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental

3

limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotations omitted); *see also* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner. *See Bladow v. Apfel*, 205 F.3d 356, 358–59, n.5 (8th Cir. 2000); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)( v). If the claimant cannot make an

4

adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.    The ALJ's Decision

At Step One, the ALJ found plaintiff met the insured status requirements through the relevant period, and she had not engaged in substantial gainful activity since the alleged onset date. At Step Two, the ALJ found plaintiff suffers from the following severe impairments:  obesity, neuropathy, carpal tunnel syndrome, back disorder, coronary artery disease, hypertension, and GI/urinary dysfunction.  [Tr. 15.]  At Step Three, the ALJ determined plaintiff's severe impairments did not meet or equal a listed impairment.

Next, in Step Four, the ALJ determined plaintiff's RFC.  The ALJ found that plaintiff

> has the residual functional capacity to perform light work as defined in 20 C.F.R 404.1567(b) except the claimant can occasionally climb stairs and ramps; can occasionally stoop, kneel, balance, crouch, and crawl; must avoid concentrated exposure to environmental irritants, including dust, fumes, odors, and poor ventilation, as well as extreme hot and cold temperatures; must avoid concentrated exposure to hazards, including dangerous moving machinery, uneven terrain, and unprotected heights; can stand and walk a total of 4 of 8 hours; needs ready access to a restroom during regularly scheduled breaks; and can frequently, not constantly, use the right hand for handling and fingering.

[Tr. 17.]

The ALJ determined that plaintiff could not perform any of her past relevant work However, the ALJ determined that her impairments would not preclude her from performing work that exists in significant numbers in the national economy, including work

5

as an inspector and hand packager, mail clerk, and electronics worker. [Tr. 21-23.] Accordingly, the ALJ found that the plaintiff is not disabled.

## IV. Standard of Review

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is less than a preponderance of the evidence but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (alteration in original) (*quoting Gavin v. Heckler*, 811 F.2d 1195, 1199 (8th Cir. 1987)). The Court must also consider any evidence that fairly detracts from the Commissioner's decision. *Id.* "[I]f there is substantial evidence on the record as a whole, [the Court] must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992). In reviewing whether the ALJ's decision was supported by substantial evidence, this Court does not substitute its own judgment for that of the ALJ—even if different conclusions could be drawn from the evidence, and even if this Court may have reached a different outcome. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

## V. Discussion

Plaintiff argues that her case should be remanded because she contends the ALJ failed to adequately account for the impact that her gastrointestinal/urinary impairments have on her ability to perform basic work activities. Notably, "GI/urinary dysfunction" is

6

included in the ALJ's list of plaintiff's severe impairments. [Tr. 15.] The ALJ also cited plaintiff's testimony that her conditions cause her severe pain, nausea, vomiting, diarrhea, and urinary incontinence and that plaintiff uses the restroom eight to ten times a day. Plaintiff's RFC addresses plaintiff's GI/urinary dysfunction only in that it requires that she "needs ready access to a restroom during regularly scheduled breaks." Plaintiff points out that such an accommodation is not an accommodation at all—all jobs require regular restroom breaks. Plaintiff argues that the ALJ did not account for additional time plaintiff says she would miss or be off-task due to complications related to plaintiff's GI/urinary dysfunction, and plaintiff notes that the ALJ did not even mention plaintiff's need to change an adult diaper three times per day. Plaintiff claims that was error.

The ALJ makes the following findings of fact related to plaintiff's GI/urinary problems:

- A September 13, 2019 medical record indicated, among other things, that plaintiff was negative for constipation, diarrhea, nausea, and vomiting. [Tr. 16.]
- Plaintiff reported that her chronic stomach issues were among ailments that limit her ability to work [Tr. 18]
- Plaintiff testified that she experiences stomach pains, diarrhea, and urinary issues (lack of bladder control, need for 8-10 bathroom breaks per day). [Tr. 18.]
- On March 12, 2020, plaintiff underwent cystoscopy with a botox injection to treat her overactive bladder with urge incontinence. [Tr. 19.]

7

- The August 30, 2021 and October 26, 2021 reports by state agency consultants noted "urge incontinence" and the Botox injection procedure and that postoperative diagnosis was overactive bladder with urge incontinence. [Tr. 20.]

- The ALJ had accounted for the plaintiff's impairments and symptoms, including the need to use the bathroom, with limitations in the plaintiff's RFC. [Tr. 21.]

It is significant that the state agency consultant reports reiterated what is stated in plaintiff's medical records, which is that plaintiff's urinary incontinence symptoms "are almost 100% resolved" as of June 2020[1]. [Tr. 58; *see also* Tr. 1198.] Although the 2021 agency reports note a June 21, 2021 wellness visit refers to "overactive bladder," that medical record actually states as follows:

> **Overactive bladder**
> **Assessment & Plan**
>    Plaintiff has been following with Dr. Enger for botox
> injections of the bladder.

[Tr. 855.] The only other medical records from Dr. Enger indicate that plaintiff's bladder symptoms were "almost 100% resolved." [Tr. 1198.] In addition, the June 21, 2021 wellness visit records state that plaintiff's "IBS symptoms are much improved" [Tr. 847] and "controlled" with medications and dietary changes [Tr. 855]. Notably, plaintiff does

---

[1] The state agency report notes a date of June 16, 2021, but that appears to be a typographical error [Tr. 58.] The medical record that the report appears to rely on is dated June 16, 2020 and is a followup appointment to her March 2020 Botox injection procedure.

not explain nor even recognize the discrepancy between plaintiff's medical records and her testimony.

Thus, although the ALJ does not explicitly address those specific medical records, they amply support the ALJ's conclusion that—despite plaintiff's testimony regarding frequent bathroom trips and thrice-daily diaper changes—the "claimant's statements concerning the intensity, persistence and limited effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [Tr. 18.]

## VI. Conclusion

This Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara*, 590 F.3d at 610. Having found the ALJ's conclusions were supported by substantial evidence and that legal standards were correctly applied, this Court affirms the ALJ's decision.

Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint [#1] is **DISMISSED with prejudice**. A separate judgment will accompany this Order.

Dated this 24th day of October, 2023.

_____
STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE